EDDIE C. TOSADO *v.* ADMINISTRATOR,
UNEMPLOYMENT COMPENSATION
ACT, ET AL.
(AC 32400)

Lavine, Robinson and Lavery, Js.

Argued April 21—officially released July 19, 2011

*Michael G. Durham*, with whom, on the brief, was *Matthew H. Geelan*, for the appellant (defendant The Wellpoint Companies, Inc.).

*Eddie C. Tosado*, pro se, the appellee (plaintiff).

*Opinion*

ROBINSON, J. The defendant, The Wellpoint Companies, Inc.,[1] appeals from the judgment of the Superior

---

[1] We note that the defendant administrator of the Unemployment Compensation Act filed a separate appeal from the judgment of the trial court. See *Tosado* v. *Administrator, Unemployment Compensation Act*, 130 Conn. App. 278, 22 A.3d 701 (2011). We refer to The Wellpoint Companies, Inc., as the defendant in this opinion.

Court sustaining the appeal by the pro se plaintiff, Eddie C. Tosado, from the determination of the employment security board of review (board) denying the plaintiff unemployment compensation benefits. On appeal, the defendant claims that the court improperly determined that the board's factual findings did not support the board's conclusion that the plaintiff was discharged for wilful misconduct. We agree and, accordingly, reverse the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. From October, 2004, until December 17, 2008, the plaintiff was employed by the defendant as a full-time manager of enrollment and billing. On November 22, 2008, a subordinate of the plaintiff, Kenya Comfort, brought her sixteen year old daughter to work, allowing her to staple invoices that contained protected health information. Subsequently, on November 25, 2008, an associate of the plaintiff, Dawn Giammetti, informed the plaintiff via e-mail that Comfort had permitted her daughter to staple all of her invoices with an electric stapler. In the e-mail, Giammetti asserted that " '[e]thically, due to [the Health Insurance Portability and Accountability Act (HIPAA)] and safety issue[s] it bothered [her].' "

The defendant's "Standards of Ethical Business Conduct" (policy) defined protected health care information to include members' names, addresses, telephone numbers and medical claim information. The invoices at issue contained at least members' names. Pursuant to the policy, the plaintiff was required to report all known or suspected violations of the policy. The plaintiff did not report that there was a known or suspected violation of the policy.

In response to Giammetti's e-mail, the plaintiff told Giammetti to " 'keep quiet' " about the violation of the policy that she had suspected. He perceived Giammetti

as a " 'trouble maker' " who had an agenda to harm her fellow employees. Subsequently, Giammetti reported the suspected violation of the policy and the plaintiff's failure to take action on the suspected violation of the policy to the defendant's human resources department (department). On the basis of the information provided by Giammetti, the department commenced an investigation into the matter. The department advised the plaintiff to keep the ensuing investigation confidential, directing him not to discuss the investigation with anyone.

Despite being directed not to discuss the investigation with anyone, the plaintiff proceeded to discuss the matter with more than one individual. The plaintiff discussed the investigation with his director, Nicole Collins. Also, on December 10, 2008, Comfort e-mailed the plaintiff to notify him that Giammetti and another employee had filed the complaint to sabotage him. In response to that e-mail, the plaintiff called Giammetti to a meeting. During the meeting, the plaintiff asked Giammetti to speak to his director on his behalf, and she agreed to do so. Subsequently, the plaintiff e-mailed Collins, stating that Giammetti was willing to talk to her " 'about the entire situation.' "

The plaintiff's employment was terminated on December 17, 2008, for violating the defendant's policy by failing to report a suspected violation of the policy and for failing to maintain confidentiality regarding the defendant's investigation of the matter. Following his termination, the plaintiff filed a claim for unemployment compensation benefits. In response to the plaintiff's claim, the defendant submitted a statement alleging the following: "[The plaintiff] was discharged for violating company policy. . . . The [plaintiff] was reminded during the course of . . . [an] investigation to maintain confidentiality regarding the investigation.

This confidentiality was breached. [The plaintiff] violated the policy by failing to report a potential breach of policy, and failing to take the expected actions of a manager within the organization." On January 29, 2009, after a hearing, an adjudicator granted the application for benefits, finding that the plaintiff was discharged for reasons other than wilful misconduct in the course of his employment.

On February 12, 2009, the defendant appealed the adjudicator's determination to an appeals referee (referee) on the issue of whether the plaintiff was discharged for reasons other than wilful misconduct. After a de novo hearing, the referee issued his decision in which he dismissed the defendant's appeal and upheld the adjudicator's award. In his decision, the referee made several findings of fact and determined that the defendant had "failed to undermine the [plaintiff's] testimony that he did not believe that the bills contained [protected health care information] material." The referee, therefore, determined that the plaintiff's failure to report the suspected violation of policy was due to an error in judgment. Accordingly, the referee concluded that the plaintiff was discharged for reasons other than wilful misconduct in the course of his employment. On March 25, 2009, the defendant filed a timely appeal to the board.

After reviewing the record, including a tape recording of the referee's hearing, but hearing no further evidence, the board reversed the referee's decision and sustained the defendant's appeal. In doing so, the board adopted most of the referee's findings of fact but modified five of the findings. Importantly, the board adopted the referee's finding that the plaintiff "was aware that [the policy] includ[ed] HIPAA requirements, which must be followed when dealing with [protected health information]," and that the plaintiff "was aware that pursuant to [the policy], he was required to report all known or

suspected violations of [the policy] . . . ." (Internal quotation marks omitted.) The board concluded that the plaintiff's conduct constituted wilful misconduct on three separate bases: (1) the plaintiff's failure to report the suspected violation of the policy constituted deliberate misconduct in wilful disregard of the defendant's interests; (2) the plaintiff's failure to keep the investigation confidential constituted deliberate misconduct in wilful disregard of the defendant's interests; and (3) the plaintiff's "failure to report the suspected violations of the visitor's policy and ethics policy constituted knowing violations of reasonable, effectively communicated and uniformly enforced employer policies which were reasonably applied to discharge [the plaintiff]." Accordingly, the board concluded that the plaintiff was discharged "for wilful misconduct under either the deliberate misconduct or rule violation definitions." (Internal quotation marks omitted.)

The plaintiff appealed the board's decision to the Superior Court on September 7, 2009. The court conducted a hearing on February 22, 2010, at which it heard arguments from the plaintiff, the defendant and the administrator of the Unemployment Compensation Act. At the hearing, the plaintiff argued that the board erred in concluding that his conduct constituted wilful misconduct. The plaintiff argued that his failure to report the suspected violation did not constitute wilful misconduct because it was his professional opinion that the bills involved in the incident did not contain protected health care information. The plaintiff further argued that his discussion of the incident with Collins during the investigation did not constitute wilful misconduct because he believed that speaking with his director about the incident was the right course of action and, at most, constituted an error in judgment. Counsel for the administrator of the Unemployment Compensation

Act countered that the board's conclusions were supported by the board's factual findings and that the plaintiff essentially was challenging those factual findings. Counsel further contended that, because the plaintiff failed to file a motion to correct pursuant to Practice Book § 22-4,[2] the plaintiff was precluded from challenging the board's factual findings.

In its memorandum of decision, the court acknowledged that the plaintiff had failed to file a motion to correct and, due to the limited scope of review, would consider only "whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably or logically have followed from such facts." (Internal quotation marks omitted.) The court first considered whether the factual findings supported the board's conclusion that the plaintiff's failure to report the suspected violation of the policy constituted wilful misconduct. With regard to this conclusion, the court stated: "Here, the board found that the plaintiff did not report a suspected or known violation of [the policy] regarding protected health care information even though the invoices contained at least the members' names. This finding of fact cannot reasonably support a conclusion that the plaintiff's failure to report the incident was . . . an intentional violation of [the policy] because there is no

[2] Practice Book § 22-4 provides: "If the appellant desires to have the finding of the board corrected he or she must, within two weeks after the record has been filed in the superior court, unless the time is extended for cause by the board, file with the board a motion for the correction of the finding and with it such portions of the evidence as he or she deems relevant and material to the corrections asked for, certified by the stenographer who took it; but if the appellant claims that substantially all the evidence is relevant and material to the corrections sought, he or she may file all of it, so certified, indicating in the motion so far as possible the portion applicable to each correction sought. The board shall forthwith upon the filing of the motion and of the transcript of the evidence, give notice to the adverse party or parties."

reference to the plaintiff's state of mind at the time he decided not to report the incident."

The court next considered whether the factual findings supported the board's conclusion that the plaintiff's failure to maintain confidentiality during the investigation constituted wilful misconduct. The court determined that this conclusion could not reasonably be supported by the factual findings because the board failed to make a requisite finding, namely, that the plaintiff's discussion of the incident with others was not "motivated or seriously influenced by mitigating circumstances of a compelling nature" as required by § 31-236-26a (c) of the Regulations of Connecticut State Agencies.

Finally, the court considered whether the factual findings supported the board's conclusion that the plaintiff's failure to report the suspected violation of the policy constituted a knowing violation of a reasonably, effectively communicated and uniformly enforced employer policy which was reasonably applied to discharge the plaintiff. The court determined that the record did not indicate that the board considered "whether the rule of the [defendant] was reasonably applied, in light of the plaintiff's employment history with [the defendant], or the existence of any compelling circumstance [as was required by § 31-236-26b (d) of the Regulations of Connecticut State Agencies]. The board makes the legal conclusion that [the defendant] reasonably applied its policies to discharge the plaintiff, but made no finding of fact to support its conclusion. Consequently, the plaintiff's failure to report the incident cannot reasonably be held to be a knowing violation of [the] policy which was reasonably applied to discharge the plaintiff." For those reasons, the court sustained the plaintiff's appeal and reversed the decision of the board. This appeal followed.

On appeal, the defendant claims that the court improperly determined that the board's factual findings did not support the board's conclusion that the plaintiff was discharged for wilful misconduct. Specifically, the defendant claims that the court improperly determined that the factual findings did not support the board's conclusion that the plaintiff's failure to report the suspected violation of the defendant's policy constituted wilful misconduct.[3] We agree.

We begin by setting forth our standard of review and the principles that guide our analysis. "To the extent that an administrative appeal, pursuant to General Statutes § 31-249b,[4] concerns findings of fact, a court is limited to a review of the record certified and filed by the board of review. The court must not retry the facts nor hear evidence. . . . If, however, the issue is one of law, the court has the broader responsibility of determining whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably or logically have followed from such facts. Although the court may not substitute its own conclusions for those of the administrative board, it retains the ultimate obligation to determine

---

[3] The defendant also claims that the court improperly determined that the board's factual findings did not support the board's conclusions that the plaintiff's failure to maintain confidentiality during the investigation constituted wilful misconduct and that the plaintiff's failure to report the suspected violation of policy constituted a knowing violation of a reasonably, effectively communicated and uniformly enforced employer policy, which was reasonably applied to discharge the claimant. Because we agree with the defendant that the court improperly determined that the factual findings did not support the board's conclusion that the plaintiff's failure to report the suspected violation of the policy constituted wilful misconduct, we need not address the defendant's remaining claims.

[4] General Statutes § 31-249b provides in relevant part: "At any time before the board's decision has become final, any party, including the administrator, may appeal such decision, including any claim that the decision violates statutory or constitutional provisions, to the superior court for the judicial district of Hartford or for the judicial district wherein the appellant resides. . . ."

whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion." (Citations omitted.) *United Parcel Service, Inc.* v. *Administrator, Unemployment Compensation Act*, 209 Conn. 381, 385–86, 551 A.2d 724 (1988).

A plaintiff's "failure to file a timely motion [to correct] the board's findings in accordance with [Practice Book] § 22-4 prevents further review of those facts found by the board." (Internal quotation marks omitted.) *Shah* v. *Administrator, Unemployment Compensation Act*, 114 Conn. App. 170, 176, 968 A.2d 971 (2009). In the absence of a motion to correct the findings of the board, the court is not entitled to "retry the facts or hear evidence. It considers no evidence other than that certified to it by the board, and then for the limited purpose of determining whether . . . there was any evidence to support in law the conclusions reached. [The court] cannot review the conclusions of the board when these depend upon the weight of the evidence and the credibility of witnesses. . . ." Practice Book § 22-9 (a). It is undisputed that the plaintiff did not file a motion to correct the board's findings in the present case.[5]

General Statutes § 31-236 (a) (2) (B) provides in relevant part that an individual is not eligible for unemployment compensation benefits if "in the opinion of the

---

[5] At oral argument before this court, the plaintiff acknowledged that he had failed to file a motion to correct and that he was bound by the board's findings of fact. "Although we are mindful of our policy to be solicitous of pro se litigants . . . such policy is applicable only when it does not interfere with the rights of other parties. Although our courts allow pro se litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law. . . . Significantly, this court repeatedly has held that a pro se litigant's failure to file a motion for correction precludes further review of the board's findings by the Superior Court." (Citations omitted; internal quotation marks omitted.) *Shah* v. *Administrator, Unemployment Compensation Act*, supra, 114 Conn. App. 177. Accordingly, we are obligated to accept the board's findings of fact.

administrator, the individual has been discharged . . . [for] wilful misconduct in the course of the individual's employment . . . ." "[W]ilful misconduct means deliberate misconduct in wilful disregard of the employer's interest, or a single knowing violation of a reasonable and uniformly enforced rule or policy of the employer, when reasonably applied, provided such violation is not a result of the employee's incompetence . . . ." (Internal quotation marks omitted.) General Statutes § 31-236 (a) (16); see also Regs., Conn. State Agencies § 31-236-26. "Whether the circumstances of an employee's termination constitute wilful misconduct on the employee's part is a mixed question of law and fact." *United Parcel Service, Inc.* v. *Administrator, Unemployment Compensation Act,* supra, 209 Conn. 386.

To establish that an individual was discharged for deliberate misconduct in wilful disregard of the employer's interest, the board must find that the individual's act or omission constituted misconduct and that such misconduct was done deliberately and in wilful disregard of the employer's interests. Regs., Conn. State Agencies § 31-236-26a. "To find that any act or omission is misconduct, the [board] must find that the individual committed an act or made an omission which was contrary to the employer's interest, including any act or omission which is not consistent with the standards of behavior which an employer, in the operation of his business, should reasonably be able to expect from an employee." Regs., Conn. State Agencies § 31-236-26a (a). "To determine that misconduct is deliberate, the [board] must find that the individual committed the act or made the omission intentionally or with reckless indifference for the probable consequences of such act or omission." Regs., Conn. State Agencies § 31-236-26a (b).

Finally, "[t]o find that deliberate misconduct is in wilful disregard of the employer's interest, the [board]

must find that: (1) the individual knew or should have known that such act or omission was contrary to the employer's expectation or interest; and (2) at the time the individual committed the act or made the omission, he understood that the act or omission was contrary to the employer's expectation or interest and he was not motivated or seriously influenced by mitigating circumstances of a compelling nature. Such circumstances may include: (A) events or conditions which left the individual with no reasonable alternative course of action; or (B) an emergency situation in which a reasonable individual in the same circumstances would commit the same act or make the same omission, despite knowing it was contrary to the employer's expectation or interest." Regs., Conn. State Agencies § 31-236-26a (c).

After a thorough review of the certified record, we conclude that the board's factual findings support the conclusion that the plaintiff's failure to report the suspected violation of the defendant's policy constituted wilful misconduct. Specifically, the board found that the plaintiff was aware that Comfort's daughter had seen the defendant's invoices, that the invoices contained at least the members' names, and that the employer's policy defined protected health care information to include members' names. The board adopted the referee's findings that the plaintiff "was aware that [the policy] includ[ed] HIPAA requirements, which must be followed when dealing with [protected health care information]," and that the plaintiff "was aware that pursuant to [the policy], he was required to report all known or *suspected* violations of [the policy] . . . ." (Emphasis added; internal quotation marks omitted.) The board also found that the plaintiff received notification from Giammetti that a suspected violation of the policy had occurred, yet he failed to report the suspected violation. In fact, the board found that rather

than reporting the suspected violation, the plaintiff told Giammetti to "keep quiet about the violation that she suspected." In making these findings, the board did not find credible the plaintiff's assertion that he did not think that he violated the policy because the information on the invoices did not appear to contain protected health care information. Accordingly, we conclude that the court improperly determined that the factual findings did not support the board's conclusion that the plaintiff's failure to report the suspected violation of the defendant's policy constituted wilful misconduct.

The judgment is reversed and the case is remanded with direction to render judgment for the defendant.

In this opinion the other judges concurred.